NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DEBRA ANN WEISS,

                Plaintiff,

v.

TEVA PHARMACEUTICALS USA, INC.,

                Defendant.

Civil Action No. 12-02226 (SRC)

OPINION

**CHESLER**, District Judge

     This matter is before the court on the motion for summary judgment filed by Defendant Teva Pharmaceuticals USA, Inc. ("Defendant"). [Docket Entry 29.] Plaintiff Debra Ann Weiss ("Weiss") has opposed. [Docket Entry 32.] In her Complaint, Weiss seeks compensatory, punitive, and injunctive relief for an alleged violation of the New Jersey Law Against Discrimination ("LAD"), N.J. Stat. Ann. § 10:5-1 to -49. Pursuant to Federal Rule of Civil Procedure 78, the Court will rule on the papers submitted, and without oral argument. For the reasons that follow, Defendant's motion will be granted.

## BACKGROUND

     This lawsuit stems from Defendant's March 22, 2011 termination of Weiss's employment. The material facts of this case are undisputed. Briefly, they are as follows:

     Plaintiff Debra Ann Weiss is a pharmaceutical sales representative. She was hired by Defendant in November 2010. Defendant is a pharmaceutical company that develops and markets branded and generic drugs. Weiss was brought on to sell two of Defendant's branded

asthma medications, QVAR and ProAir. In that role, Weiss was required to visit doctor's offices, medical groups, and pharmacies in Northern New Jersey and convince physicians and pharmacists to prescribe or provide QVAR and ProAir to their patients.

### A. The Reeder Incident and Investigation

In December 2010, shortly after being hired, Weiss attended a two-week training program in Pennsylvania provided to newly hired sales representatives. One of the trainers at this program was a sales representative named Kerry Reeder ("Reeder"). During the second week of the program, Reeder made a number of inappropriate comments to Weiss, sent her inappropriate and sexually suggestive text messages, and made an inappropriate comment to another newly hired sales representative, Erin Lahey ("Lahey").

Lahey informed Jeff Germani ("Germani") – a sales manager with Defendant who was the direct supervisor to both Lahey and Weiss – about Reeder's conduct during the training program. In response to Lahey's complaint about Reeder's behavior, Germani contacted Weiss to inquire about Reeder's conduct during the training session. Weiss described to Germani Reeder's comments and sent Germani copies of the suggestive text messages. Shortly thereafter, Germani contacted Paul Ellwood ("Ellwood"), a senior human resources director, and instructed Ellwood to begin a formal investigation into Reeder's conduct at the training session (the "Reeder investigation"). In the course of the Reeder investigation, Ellwood conducted formal telephone interviews with both Weiss and Lahey. As a result of the investigation into his conduct, Reeder received a written warning for behaving inappropriately, was removed from his role as a regional sales trainer, and was warned that any future conduct violations could lead to

his termination.[1]

B.    Weiss's Performance as a Sales Representative

Weiss's first performance review occurred on January 20, 2011, less than a month after she began interacting with doctors and pharmacists in the field.[2] The review was generally positive and did not contain any meaningful criticisms of Weiss's performance; likewise, Germani's verbal comments to Weiss about her job performance were positive. The evidence indicates, however, that shortly after Weiss went out into the field Defendant received a complaint about Weiss from the Cedar Knolls group, a collection of pulmonary and allergy doctors and one of Defendant's biggest customers in northern New Jersey. Germani testified that doctors at Cedar Knolls were offended by what they perceived was an inappropriate and unprofessional remark or series of remarks made by Weiss in their office regarding a birth control product Weiss had sold when previously employed by another pharmaceutical company. Lahey, who was present when Weiss made the complained about comment, testified at deposition that the doctors at Cedar Knolls considered Weiss's behavior "inappropriate" and "a

---

[1] Weiss makes much of Ellwood's decision to wait forty-three days to interview Reeder after the sexual harassment complaint against him was filed. Weiss also focuses on the fifty-seven day gap between the complaint against Reeder and the warning letter sent to Reeder on February 15, 2011 sanctioning him for inappropriate conduct. Weiss's brief in opposition does not suggest why these delays are relevant to the instant motion. In her deposition Weiss "speculate[s]" that Reeder receiving the warning letter in February somehow created "extra work" for, or "extra pressure" on, Germani. (Plf.'s Dep 148:18 – 149:23.) Weiss proffers no competent evidence to corroborate this speculation, and there is no evidence in the record to dispute Germani's deposition testimony that he was not involved with the Reeder investigation and reprimand after turning the matter over to Ellwood in late December 2010.

[2] Weiss's performance was evaluated by, among other ways, a "ride-along" or "field visit" conducted by her supervisor, Germani. As its name implies, a ride-along/field visit allows a sales manager to ride with junior sales representatives and observe their performance as they visit various doctor's offices. The result of the ride-along/field visit is a document called a "Field Coaching Report," which rates the sales representative's performance and strengths and weaknesses, details interactions with doctors and pharmacists, and suggests ways for the sales representative to improve. Weiss received two such Reports, the first in late January 2011 and the next in mid-March 2011.

problem." (Lahey Dep. 28:8-13.)

Weiss's second performance review, conducted in late February 2011 after the incident at Cedar Knolls, indicated that Weiss was unable to satisfactorily sell Qvar and ProAir. In contrast to Weiss's self-assessment of her job performance – which is, not surprisingly, positive – the February 2011 indicates that Weiss was, among other things, unable to grow market share for her two products, not utilizing sales materials to sell Defendant's products, and not meeting prescribed goals regarding the number of times a day she should be calling on doctors. Indeed, Germani was so distraught by Weiss's performance that he wrote in an e-mail to Ellwood in mid-March 2011 that "for every day [Weiss] is out in the field, she is hurting our efforts more than helping." Moreover, an analysis of meetings and visits Weiss had with doctors in which she left a sample of Defendant's products suggested to Germani that Weiss was not working full days.[3]

### C. Weiss's Termination and the Instant Lawsuit

Defendant terminated Weiss's employment on March 22, 2011, citing Weiss's unsatisfactory job performance. This lawsuit, originally filed in New Jersey Superior Court, followed. Weiss alleges that she was terminated by Defendant in retaliation for her participation

---

[3] Weiss disputes the probative value of the sample call analysis, (Opp. Br. at 15-16), and testified at her deposition that the discrepancy could be due to doctors in her territory already having enough samples of Qvar and ProAir, or simply not wanting them. Weiss does not explain, however, why the daily windows within which she made sample calls are so narrow, averaging less than three hours per day in February and March 2011. Weiss's explanation is also at loggerheads with Lahey's deposition, in which Lahey testified that doctors in the same territory signed out samples from her "every day . . . between eight and five." (Lahey Dep. 42:11-12.) The Court is, however, skeptical about Defendant's sample call analysis for a different reason – Defendant specifically censured Weiss in her February performance review for her failure to properly enter information regarding call visits with doctors into Defendant's system. Thus, the Court acknowledges that, drawing all justifiable inference in Weiss's favor, Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004), the sample call discrepancy could in part be due to Weiss's failure to enter call information properly, and not her failure to work full days. But as explained herein, even ignoring the sample-call evidence Defendant has proffered sufficient non-retaliatory justifications for Weiss's termination.

in the Reeder investigation, in violation of the anti-retaliation provisions of the LAD.[4]
Defendant timely removed to this Court [Docket Entry 1],[5] and now moves for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment under Federal Rule of Civil Procedure 56(a) is appropriate when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino, 358 F.3d at 247 (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district

---

[4] Much of the Defendant's moving brief is dedicated to Weiss's failure to prove a sexual harassment claim under the LAD. In her opposition brief, however, Weiss expressly abandons a sexual harassment claim, insofar as one might have existed previously. (Opp. Br. at 29.)
[5] This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and § 1441.

5

court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## DISCUSSION

### A.  Retaliation in Violation of the LAD

"[B]arring discrimination, a company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to

certain positions." Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 527 (3d Cir. 1992). In other words, a court does not sit as arbiter of particular employment decisions, but instead determines whether such decisions were animated by an illegal discriminatory purpose. See id.; Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997). The LAD specifically prohibits discrimination on the basis of retaliation. See N.J. Stat. Ann. § 10:5-12(d) (making it unlawful for an employer "to take reprisals against any person because he has opposed any practices or acts forbidden under this act or because he has filed a complaint . . . .").

To make out a *prima facie* case for relation under the LAD, a plaintiff-employee must show that: (1) the employee "engaged in a protected activity;" (2) the employee "suffered an adverse employment action;" and (3) "there was a causal connection between the protected activity and the adverse employment action." Cardenas v. Massey, 269 F.2d 251, 263 (3d Cir. 2001); Craig v. Suburban Cablevision, Inc., 660 A.2d 505, 508 (N.J. 1995). Once the plaintiff establishes a *prima facie* case of retaliation, a presumption of discrimination arises and it becomes the employer's burden to "articulate a legitimate, non-discriminatory reason for its adverse employment decision." Maclean v. Stuart Weitzman Shoes, 863 F. Supp. 2d 387, 392 (D.N.J. 2012) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).[6] The employer satisfies this "relatively light" burden of production by "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (citation omitted).

---

[6] "The *McDonnell Douglas* burden-shifting requirements apply with equal force" to retaliation claims brought pursuant to the LAD. See Andes v. New Jersey City Univ., 419 F. App'x 230, 234 (3d Cir. 2011) (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997)).

7

Assuming the employer meets its burden, "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." Id. At this point, a plaintiff "may defeat a motion for summary judgment . . . by pointing 'to some evidence direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Shaner v. Synthes, 204 F.3d 494, 501 (3d Cir. 2000) (quoting Jones v. School Dist. of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999)). The plaintiff employer, however, "cannot simply show that the employer's decision was wrong or mistaken." See Fuentes, 32 F.3d at 765. "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them" unreliable and thus infer the employer acted for reasons other than the asserted non-discriminatory ones. Id. (quoting Ezold, 983 F.2d at 531). This difficult burden arises from the innate "tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs." Ezold, 983 F.2d at 531.

**B.    Weiss's *Prima Facie* Case**

Defendant argues that Weiss's retaliation claim must fail because Weiss cannot established the third element of her *prima facie* case; namely, Weiss fails to show a causal connection between her participation in the Reeder investigation and her subsequent termination.[7] The Court agrees.

---

[7] Weiss undoubtedly suffered an adverse employment action – she was terminated from her sales position. Defendant also concedes that Plaintiff's participation in the Reeder investigation

8

A retaliation plaintiff may establish the requisite causal connection using various types of circumstantial evidence. Temporal proximity between protected activity and the adverse employment action is the "obvious method" by which a retaliation plaintiff raises the inference that the two events are causally connected. See Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997). But a plaintiff can demonstrate a causal link in other ways, including through evidence of "a pattern of antagonism" or "pretext." Andes, 419 F. App'x at 234 (citing Kachmar, 109 F.3d at 177). Consequently, evidence of causation need not be limited to "timing and demonstrative proof, such as actual antagonistic conduct or animus. Rather, it can be other evidence gleaned from the record as a whole from which causation can be inferred." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000). There must, however, be some competent proof from which a court can so infer. "[T]he mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997)).

Here, no competent evidence in the record ties the protected activity – Weiss's participation in the Reeder investigation – to her termination. As an initial matter, the three-month gap between the two events, while probative, cannot by itself defeat summary judgment. See LeBoon v. Lancaster Jewish Comty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) ("a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment" (citing Clark Cty. School Dist. v. Breeden, 532 U.S. 268, 273 (2001))). Moreover, the undisputed evidence tends to negate any

---

constitutes protected activity for purposes of the LAD. (Mov. Br. at 28.) Thus, the only element of Plaintiff's *prima facie* case in dispute on this motion is causation.

inference of retaliation. Weiss's first field review from Germani, which came a month after her participation in the Reeder investigation, was, as Weiss herself testified, positive and encouraging. Moreover, it was Lahey, and not Weiss, who lodged the complaint against Reeder. Since both Lahey and Weiss reported to Germani, it makes little sense that Germani would, as a response to the harassment complaint, retaliate by terminating Weiss but not Lahey. To manufacture the necessary causal link Weiss suggests that Germani terminated her to protect Reeder in some way, or avoid a managerial headache stemming from Reeder's investigation. (Weiss Dep. 148:14-149:23.) But if that were the case, there is no reason Germani would have waited until late March to terminate Weiss, more than a month after the Reeder investigation had concluded and Reeder had been disciplined. In all events, no evidence apart from Weiss's unsubstantiated speculation – which is to say, no evidence at all – purports to link Weiss's December 2010 participation in the Reeder investigation with her March 2011 termination.[8]

Any causal connection is further negated by Weiss's inability to demonstrate that the non-retaliatory reasons proffered for her termination are pretext. See Farrell, 206 F.3d at 286 (noting that the tests for causation and pretext can be conflated and "evidence supporting the prima face case is often helpful in the pretext stage"); Andes, 419 F. App'x at 234-35 (remanding to trial court to consider in its causation analysis "circumstantial evidence of pretext," in additional to temporal proximity). As explained in greater detail in Part B *infra*, Weiss has failed to submit evidence from which the Court can infer that Defendant's proffered reasons for

---

[8] Plaintiff testified at deposition that Germani was "cold and negative" and "stone faced" during the second field review. (Plf.'s Dep. 86:11 – 88:14.) Even if true, such conduct is not evidence of "intervening antagonism" or "retaliatory animus" sufficient to support a retaliation claim. See Krouse, 126 F.3d at 504. In light of the record's abject lack of evidence linking Plaintiff's termination with her testimony in the Reeder investigation, Germani's "cold" demeanor is not probative on the issue of causation; it could, for instance, be evidence of a supervisor's displeasure with an underperforming employee.

Weiss's termination – *e.g.*, Weiss jeopardized a relationship with a major client by making inappropriate comments about a birth control device – are pretext for a discriminatory purpose. The lack of circumstantial evidence supporting an inference of pretext further undermines any finding of a causal link.

In sum, Weiss asks the Court to infer that her participation in a harassment complaint filed by another employee led to her termination three months later, but ignores (1) the positive performance review that she received after the harassment complaint was filed; (2) the fact that the female co-worker who brought the complaint suffered no adverse effects; and (3) evidence indicating that Weiss's on the job conduct led to her termination. Weiss has not put forth, and the Court cannot "glean[] from the record as a whole" evidence supporting a reasonable inference of causation. See Farrell, 206 F.3d at 279. It follows that summary judgment in favor of Defendant is appropriate.

### C. Defendant's Non-Retaliatory Reasons for Weiss's Termination

Assuming *arguendo* Weiss can establish a *prima facie* retaliation case, summary judgment is also appropriate because Weiss fails to show that Defendant's articulated legitimate, non-retaliatory reasons for Weiss's termination are pretextual. Defendant asserts that it terminated Weiss because she was an ineffective pharmaceutical sales representative and, as a result of a sample calls audit, discovered she was not working full days. The Court finds that these legitimate, non-retaliatory reasons are sufficient to carry Defendant's "relatively light" burden. Fuentes, 32 F.3d at 763.

Weiss's evidence in rebuttal falls well short of demonstrating "such weaknesses, implausibilities, inconsistencies, or contradictions in" Defendant's proffered reasons that a

reasonable factfinder could find those reasons "unworthy of credence." See id. at 765. Weiss's apparent position is that Germani's evaluations of her performance – the January and February field reviews – were unfair because they were conducted much earlier than performance evaluations of her peers. (Opp. Br. at 9, 13.) Even taking this assertion at face value, however, Weiss fails to dispute the compelling reasons on the record for Defendant to conduct an earlier than normal performance review and eventually terminate Weiss. In particular, the undisputed testimony regarding Weiss's behavior at the Cedar Knolls medical group is fatal. As Lahey acknowledged unequivocally at deposition, Weiss's discussion about a birth control product during a sales luncheon at the Cedar Knolls group was "inappropriate," causing a "problem" and "some big trouble with [a doctor there]." (Lahey Dep 28:2-13.) On this subject, Lahey's deposition corroborates Germani's testimony that the Cedar Knolls group conveyed to him the inappropriateness of Weiss's remarks about the birth control device. (Lahey Dep. 28:10-13 ("[a Cedar Knolls medical assistant] said . . . we don't make jokes like that, it's inappropriate . . . [a]nd she wanted [Germani's] number").)[9]

The record thus makes clear that Defendant had ample justification to move quickly to evaluate Weiss's performance as a sales representative – namely, an important client had voiced a significant concern with Weiss's conduct in its office. Defendant's business relies in large part on its clients, *i.e.*, pulmonary and allergy doctors, prescribing Defendant's medication to their patients. The relationship between those doctors and the individuals who sell Defendant's products is therefore of critical importance. It is eminently reasonable for Defendant to take its

---

[9] Critically, Weiss's testimony does not dispute that practitioners at Cedar Knolls, who again were not obstetricians or gynecologists, were uncomfortable with her discussion of a birth control device in their office. Weiss only testified that she herself did not think the conversation of the birth control device seemed inappropriate, (Weiss Dep. 100:14-17), which is irrelevant to the question of whether Defendant's customers were offended by her comments.

customer's complaint about one of its employees at face value – where, as is the case here, the complaint itself was not motivated by a discriminatory purpose – and subsequently conclude that that same employee was not capable of satisfactorily performing her job. See Keller, 130 F.3d at 1109 (noting that defendant-employer "would have had a strong reason for discharging a key executive" who could not accomplish a key objective of his job). Weiss has pointed to no competent evidence on the record that refutes this fact, and indeed no evidence to refute the highly critical February 2011 performance review. As such – and even without taking into account the evidence regarding the sample calls audit – Weiss has failed to carry her burden and demonstrate that "discriminatory animus" provoked Defendant's decision to terminate her. Fuentes, 32 F.3d at 765. Therefore, the Court grants Defendant's motion for summary judgment as to Weiss's retaliation claim on the alternative grounds that Weiss fails to demonstrate pretext.

## **CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment. An appropriate form of Order accompanies this Opinion.


                                                      s/ Stanley R. Chesler
                                                      STANLEY R. CHESLER
                                                      United States District Judge

Dated: October 1, 2013